IN THE MATTER OF THE ESTATE OF MARY JAMISON, Deceased; THOMAS H. GREENWOOD, Administrator, Appellant, v. HENRY LOUIS ZAUSCH, Executor, Respondent.

St. Louis Court of Appeals, May 4, 1915.

1. **EXECUTORS AND ADMINISTRATORS: Allowance to Executor: Expenses Incurred in Defending Will: Trusts.** A will which directed the executor to take possession of the real and personal property of testatrix, and to hold and manage the real property during administration, make all needful repairs and pay taxes and insurance thereon, and further directed that,

Greenwood v. Zausch.

out of the personalty and net rents of the realty, he pay her debts and the expenses of administration, and that he pay monthly to her husband, for his support during the administration, at least thirty dollars, and that, in case a larger amount be required, a larger amount may be paid, created a trust in the executor, during administration, to manage and control the real estate and collect the rents and turn the net income into the personal estate; and hence where the husband brought suit for one-half of the estate, instead of the share bequeathed to him, it was proper to charge against the estate attorneys' fees incurred by the executor in defending the trust against such suit.

2. TRUSTS AND TRUSTEES: Allowance to Trustee: Attorneys' Fee. A trustee is entitled to an allowance out of the trust estate for attorneys' fees incurred in defending the trust estate in litigation instituted against it.

3. WILLS: Construction: "Support of Husband During Administration." A will which directed the executor to pay to the husband of testatrix thirty dollars monthly during the administration of the estate, and to pay four-fifths of the income to him when the estate passed from the hands of the executor, called for the payment of the monthly sum during the entire administration of the estate, although extending beyond the usual statutory period of administration of two years on account of the pendency of litigation against the estate, instituted by the husband, and, until final settlement, the husband was not entitled to receive the four-fifths of the income.

4. ———: ———: ———: Discretion of Executor. A will which directed the executor to pay to the husband of testatrix thirty dollars monthly during the administration of the estate, "and in case of a larger amount being required by sickness, such larger amount as may thus be made absolutely necessary may be paid him," conferred discretion on the executor to pay more than thirty dollars a month to the husband, in case of "absolute necessity," caused by sickness; and where the husband made no claim for an additional allowance, so that the executor was not called upon to exercise his discretion thereabout, the administrator of the husband's estate was not entitled to recover an additional allowance, and especially so in view of the fact that the evidence did not conclusively show that an "absolute necessity" therefor existed.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

AFFIRMED.

*Jamison & Thomas* for appellant.

(1)    An executor or administrator may employ counsel and charge the estate therefor if the charge so made is reasonable and the services of counsel are actually rendered and are necessary to the administration of the estate; otherwise, the executor or administrator will not be allowed to take credit in his settlements for sums so expended. In re Estate of Souland, 141 Mo. 642; In re Estate of Frey, 96 Mo. App. 209; Yerkes Appeal, 99 Penn. St. 401; Shaw v. Moderbull, 104 Ill. 65.    (2)   In construing a will, the intent of testator must be ascertained from the whole instrument and the words understood in the sense indicated by the whole will.   In case of the testator's intention being uncertain, the circumstances attending and surrounding the execution of the will and the relationship existing between the testator and the beneficiaries under the will should also be considered.   Armor v. Frey, 226 Mo. 646; Register v. Elder, 231 Mo. 321; Settler v. Shafer, 229 Mo. 561; Stewart v. Jones, 219 Mo. 614; Dameron v. Lanyon, 234 Mo. 627; Sanitarium v. McCune, 112 Mo. App. 337; Wiegand v. Woerner, 155 Mo. App. 254.

*Rassieur, Kammerer & Rassieur* for respondent.

(1)    The executor had the authority to employ attorneys to advise and represent him in the administration of the estate, and to pay them the reasonable value of their services.   Sec. 229, R. S. 1909; Hill v. Evans, 114 Mo. App. 715; Matson v. Pearson, 121 Mo. App. 120.   (2)   The executor, as testamentary trustee of the trust created for the benefit of Jamison, properly defended the trust against the suit brought to defeat it.   Coffman v. Gates, 110 Mo. App. 475, 488; Albert v. Sanford, 201 Mo. 117, 133; Pomeroy, Eq. Jur., sec. 1085.   (3)   The pleadings and record in the suit instituted by Jamison, in which the executor was made a party defendant, not having been made a part of the

record in this case, the question whether or not it was necessary for the executor to appear and defend, is not open for review on this appeal. Northwestern Stove Repair Co. v. Cornwell, 148 Mo. App. 605; State ex rel. v. Hallen, 165 Mo. App. 422; City of Dexter v. McCollom, 58 Mo. App. 450; Howell v. Stewart, 54 Mo. 400. (4) (a) Where a trustee is given discretion to pay for the support and maintenance of a beneficiary, the exercise of this discretion will not be interfered with or reviewed, in the absence of a showing that it was arbitrarily or unfairly exercised. Haydel v. Hurck, 72 Mo. 253; Ames v. Scudder, 11 Mo. App. 168 (affirmed, 83 Mo. 189); Kilburn v. Hosmer, 10 Cush. (Mass.) 146; Reed v. Patterson, 44 N. J. Eq. 211; Perry on Trusts (6 Ed.), secs. 510, 511. (b) And where the beneficiary, in his lifetime, did not complain of the exercise of the discretion by the trustee, and did not demand that the allowance be increased, his personal representatives or creditors, after his death, are not in a position to complain.

NORTONI, J.—This is an appeal from a judgment approving the final settlement in the estate of Mary Jamison, deceased. The appeal is prosecuted by Thomas H. Greenwood, administrator of the estate of Jesse T. Jamison, deceased, who in his lifetime was the husband of Mary Jamison.

By her last will, Mary Jamison, deceased, made several provisions in favor of her husband, Jesse T. Jamison, and it is in respect of these that the administrator of the latter's estate lays claim against the estate of the former.

It appears Mary Jamison died on January 29, 1906. Her will was duly proved, and Henry L. Zausch, who was nominated therein as such, was appointed executor thereof by the probate court on January 31, 1906. Final settlement of the estate was delayed and post-

poned because of litigation instituted and prosecuted by Jesse T. Jamison, the widower of the testatrix, who declined to accept the provisions made for him in the will. This litigation was finally determined by a judgment of the Supreme Court affirming the judgment of the circuit court denying that Jesse T. Jamison was entitled to one-half of the real estate which produced the income through rentals collected by the executor of Mary Jamison and reported by him in his several settlements. Jesse T. Jamison departed this life November 28, 1909, pending the litigation above mentioned and prior to the filing of the final settlement of the estate of Mary Jamison in the probate court. By the will of Mary Jamison, her executor was charged with the duty of looking after her real estate, collecting the rents, etc., during the administration, paying her debts and an allowance therefrom of thirty dollars per month to her husband, Jesse T. Jamison. Although the executor of Mary Jamison paid to Jesse T. Jamison five dollars and paid out for his benefit $45.81 besides, he refused to accept further payments under the provisions of the will of his wife and instituted the litigation in which he laid a claim of some character to one-half the real estate in his own behalf. During the time, it appears Jesse T. Jamison boarded and lodged with a family by the name of Flynn, and there is evidence tending to prove that the reasonable value of the board furnished him was five dollars per week while other services for nursing and care were of the reasonable value of an additional five dollars per week.

After the decease of Jesse T. Jamison and after the suit he had instituted was finally determined, his administrator, Greenwood, filed a claim in the probate court against the estate of Mary Jamison, deceased, in affirmance of the will whose provisions Jamison had repudiated and for the amounts said to be due him thereunder; also an objection or exception to the allowance of attorney's fees made to the executor of

Mary Jamison, Henry L. Zausch, expended by him in matters pertaining to the settlement of the estate and in defense of the suit of Jamison by which he laid claim to one-half of the real estate of his wife. It appears the probate court allowed the executor, Zausch, $521.35 out of the estate to compensate attorney's fees and this allowance was likewise affirmed, on appeal, by the circuit court.

It is argued that, though this allowance was proper in part—that is, in so far as it went to compensate for the services of an attorney rendered in conducting the administration and settling the estate—so much of it as was allowed to compensate for services rendered by the executor's attorney in the circuit court and in the Supreme Court, in the suit of Jamison by which he claimed one-half interest in the real estate of his wife, was improperly allowed and should, therefore, be surcharged. Of this it is sufficient to say that the record does not disclose the precise character and nature of this litigation, except that it was a suit of Jesse T. Jamison to which the executor of his deceased wife, Mary Jamison, was a party and by which he laid claim to one-half interest in the real estate of his deceased wife. By the provisions of the will of Mary Jamison, the executor, who was a party to that suit, was directed to take possession of the real estate of which the testatrix died seized, as well as the personal property, and, out of such personalty and out of the net rents of such realty, pay the liabilities of the estate, etc.; and by a further provision the executor was required to hold and manage the real estate during the time of the administration, make all needful repairs, pay taxes, insurance, etc., thereon. It is entirely clear that the executor was made a trustee for the time under the will with respect to the real estate, and, indeed, the principal portion of the personal estate of Mary Jamison came into the hands of her executor through rents monthly collected on the real estate she owned

at the time of her death. It appearing that the executor was a party defendant to the suit instituted by Jesse T. Jamison by which it was sought to take one-half of the real estate which yielded the income and constituted the principal part of the *corpus* of the personal estate, it was competent to charge the portion of the attorney's fees, as was done, which accrued in defending such trust against the estate of which he was executor. Obviously this provision of the will created a trust as therein suggested on the part of the executor to manage and control the real estate during the administration, collect the rents and turn the net income into the personal estate. In protecting the real estate from assault, the executor protected the fount from which was supplied the coffers of the personal estate, and in this view it was well enough to charge such estate with the expense of defending the title to the realty, for such was defending the trust. [See Ghio v. Harbaugh, 110 Mo. App. 475, 488, 85 S. W. 657; Albert v. Sanford, 201 Mo. 117, 133, 99 S. W. 1068.]

Under the provisions of the will, Jesse T. Jamison was to receive four-fifths of the income, after all expenses were paid, from the entire estate when it passed from the hands of the executor—that is, after administration was closed. Then, too, the second provision of the will directs the executor to pay Jesse T. Jamison thirty dollars per month for his support, and, in event a larger amount was required on account of sickness, such larger amount as may thus be made absolutely necessary may be paid to him, providing the rents of the property justify the same. On the final settlement of the estate of Mary Jamison, the executor, Zausch, reported in cash $2,054.04. The probate court allowed against the Mary Jamison estate the claim of the administrator of the estate of Jesse T. Jamison of thirty dollars per month for all of the time the estate was in administration, but deducted from such amount

$50.81 paid to Jamison and for his use by the executor during his lifetime. The amount thus allowed to the estate of Jesse T. Jamison was $1,329.19, and the re- mainder, $724.85, was allowed to Hanora Zausch, the residuary devisee. This the circuit court approved.

The appellant, administrator of the estate of Jesse T. Jamison, complains of this and insists, first, that the allowance of thirty dollars per month should have been for two years only—that is, during the usual course of administration—and thereafter an allowance of four-fifths of the income of the entire estate should be awarded, because, it is said, such was the due of Jesse T. Jamison, had the estate of his wife been settled in the usual time—that is, the two-year period. A further complaint is made as to the amount of the al- lowance on the ground that Jesse T. Jamison was sick and unable to care for himself while residing at the home of the Flynns and his keep, including board, nursing and care during the time was of the reasonable value of ten dollars per week.

In disposing of the arguments concerning these items, it is important to consider so much of the will of Mary Jamison as is relevant thereto. Besides an- other provision giving to Jesse T. Jamison four-fifths of the income of the estate after its administration was closed, the entire bequest to his benefit appears in the second provision of the will. Such second provision is as follows:

"Secondly. It is my wish and will that my here- inafter named executor take possession of the real estate of which I die seized, as well as the personal property, and out of such personalty and out of the net rents of such realty, pay the liabilities of my es- tate and the expenses of the administration thereon, and monthly pay to my husband for his support dur- ing the administration of my estate, the sum of at least thirty dollars, and in case of a larger amount be- ing required by sickness, such larger amount as may

thus be made absolutely necessary may be paid to him, providing the rents of the property justify the same.''

This provision of the will clearly directs the payment of thirty dollars a month for the support of Jesse T. Jamison ''during the administration of my estate,'' but Jamison declined to accept the amount during the time mentioned, for that he preferred to institute and prosecute a suit laying claim to one-half of the realty which yielded the rents that constituted the principal portion of the personal estate out of which he was to be paid the monthly allowance. It is urged that the testator contemplated the usual statutory period of administration, which is, generally speaking, two years, when she provided that he should be paid this amount ''during the administration of my estate,'' and, therefore, after such two-year period had expired, Jamison was entitled to an allowance, not of thirty dollars per month, but rather of four-fifths of the entire income of the estate. Had the estate been administered and closed within two years, the amount claimed—that is, four-fifths of the income of the estate in lieu of the thirty dollars monthly payment—would certainly be due; but the estate continued in administration for nearly five years because Jamison instituted the suit, declined to take the allowance under the will, and thus postponed the final settlement and discharge of the executor which would have yielded to him four-fifths of the income of the estate. In such circumstances, we believe his administrator may not recover as for four-fifths of the entire income in lieu of the thirty dollars per month because the estate was essentially continued in administration for the time. The intention of the testator seems to be clear that her husband was allowed thirty dollars per month as a ''support during the administration of my estate.'' The administration was certainly continued during all of this time and until it was closed the four-fifths of the income otherwise due Jamison at an earlier date was postponed.

But it is said at any rate the will provides a support of thirty dollars per month during the administration of the estate "and in case of a larger amount being required by sickness such larger amount as may thus be made absolutely necessary may be paid to him, providing the rents of the property justify the same." The argument concerning this provision of the will is that as it appears Jamison was sick and required care and attention while living at the home of the Flynns, an allowance in addition to thirty dollars per month should be awarded to his estate now after his decease, because the evidence tends to prove that, while his board and lodging were worth five dollars per week, his nursing and care were reasonably worth an additional five dollars per week and, therefore, thirty dollars per month was insufficient to compensate for both. Of this it is to be said that there is no positive direction to the executor to pay an additional amount on account of the sickness of Jamison though the will manifests the intention of his wife to award him more if such was absolutely necessary. The precise language concerning this is "and in case of a larger amount being required by sickness, such larger amount as may thus be made absolutely necessary may be paid to him, providing the rents of the property justify the same." The use of the word "may" implies a discretion on the part of the executor as to this matter and the general context of the provision seems to suggest the thought that he should investigate and ascertain whether a larger amount was "absolutely necessary." Jamison made no claim, during his lifetime, to a larger amount on account of his sickness and, indeed, declined to accept any part of the allowance made to him under the will, save the small amount of five dollars once paid to him by the executor shortly after the death of his wife and the $45.81 which was paid out for his benefit but without his request. The evidence is that the executor offered to take Jamison to his home and board, lodge

and care for him at twenty dollars per month, and there is evidence, too, that the home in which he boarded—that is, of the Flynns—was a small house at the rear end of a lot on an alley and, as is said, in the language of the witness, "it was not a very nice place." The trial court evidently found that thirty dollars per month was amply sufficient to compensate for the board, lodging, nursing and care of Jamison and that it was not absolutely necessary that his estate should be allowed five dollars per week in addition for nursing and care.

But aside from this finding of fact, it seems that the language of the will itself portrays an intention on the part of the testator to provide her husband with an additional allowance in case of his sickness only when it was absolutely necessary, for such are the words employed, and that in event such absolute necessity existed the executor "may" pay more. Obviously the context of the words imply discretion on the part of the executor, which, of course, should be soundly and fairly exercised after he had ascertained that an absolute necessity existed. During his lifetime Jamison made no suggestion of such necessity and made no claim on that score. The executor, therefore, made no investigation and discovered no necessity. The evidence introduced does not reveal conclusively that such a necessity exists, for when we look to it, as the trial court, no doubt, did, it appears the executor offered to keep Jamison and furnish board for twenty dollars per month, whereas he staid at the Flynns' and received such accommodations as were offered to him in a very simple home.

In this view, the allowance to the estate of Jesse T. Jamison of thirty dollars per month during the time the estate of his deceased wife was in administration, less the amount of $50.81 which was paid to him during his lifetime, should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.